UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE ESTATE OF SUZANNE BARDZELL,**<br><br>Plaintiff,<br><br>v.<br><br>**JESSICA GOMPERTS, et al.**<br><br>Defendants. | Civ. No. 20-4555 (KM)(ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Estate of Suzanne Bardzell seeks reconsideration of this Court's January 27, 2021 Order (DE 16)[1] dismissing its Amended Complaint against Defendants the Bergen County Prosecutor's Office ("BCPO") and BCPO Assistant Prosecutor Jessica Gomperts ("AP Gomperts"). For the reasons provided herein, I will deny Plaintiff's motion for reconsideration. (DE 17).

### I. Summary

The parties' familiarity with the facts is assumed. This case arises from an unimaginable tragedy, for which anyone must have sympathy. It is hard to avoid the conclusion that the authorities should have done better here. Under the law, however, compensation for the perpetrator's criminal acts may not be obtained from the county prosecutor.

On October 5, 2015, former New York Police Department ("NYPD") Officer Arthur Lomando broke into the home of Suzanne Bardzell, with whom he had

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Am. Compl." = Plaintiffs' Amended Complaint (DE 3)

1

been in a romantic relationship, and threatened to kill her with scissors. Lomando stalked Bardzell, and she reported various incidents to the police. The response of the authorities, particularly the BCPO and BCPO Assistant Prosecutor Jessica Gomperts ("AP Gomperts"), is alleged to have been inexcusably lax. On October 22, 2015, Lomando murdered Bardzell.

Plaintiff subsequently initiated a civil rights action, alleging a violation of Bardzell's right to be free from a state-created danger. The Amended Complaint alleged, *inter alia*, that Defendants declined to bring appropriate charges against Lomando, and did not take other steps that might have prevented him from harming Bardzell.

On January 27, 2021, this Court granted Defendants' motion to dismiss the Amended Complaint, finding that Eleventh Amendment sovereign immunity bars the claims against the BCPO and AP Gomperts in her official capacity, and that absolute prosecutorial immunity bars the claims against AP Gomperts in her individual capacity. *Estate of Bardzell v. Gomperts*, No. 20-4555, 2021 WL 288090, *8, 15 (D.N.J. Jan. 27, 2021). Plaintiff now seeks reconsideration.

II. **Discussion**

　　a. **Legal Standard**

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present

newly discovered evidence.") (internal citation omitted). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

### b. Plaintiff's Motion for Reconsideration

On reconsideration, Plaintiff submits that neither sovereign nor prosecutorial immunity "exonerates a prosecutor who commits willful misconduct during a criminal investigation, prior to the initiation of criminal charges." (DE 17-1 at 3). To that end, Plaintiff submits four reasons why I should reverse dismissal of the action:

1. Absolute immunity does not apply to a prosecutor's action taken prior to the initiation of criminal changes (*i.e.,* at the investigation stage).
2. Absolute immunity does not apply to shield willful misconduct.
3. Eleventh Amendment and absolute prosecutorial immunity raises factual issues that cannot be decided on a motion to dismiss.
4. To the extent the immunity doctrines exonerate willful misconduct, they should be revisited.

I will address each argument in turn.

### i. Absolute immunity and investigative actions

First, Plaintiff submits that the court "fail[ed] to draw a line" between a prosecutor's investigative decisions, which it contends are entitled to only qualified immunity, and other decisions which constitute prosecutorial functions. (DE 17-1 at 5-6). As it did before the Court on Defendants' motion to dismiss, Plaintiff argues that absolute immunity "does not apply to a prosecutor's acts taken prior to the initiation of criminal charges." (*Id.*). The Third Circuit has rejected that very "line" that I am urged to draw: *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008) ("We have rejected bright-line rules that would treat the timing of the prosecutor's action (e.g. pre- or post[-]indictment), or its location (i.e. in- or out-of-court), as dispositive.").

Bright-line rules aside, the Court did discuss the allegedly investigative nature of AP Gomperts's conduct and did address the application of immunity to those acts. *Estate of Bardzell*, 2021 WL 288090, at *9-14. In analyzing each alleged action (or inaction), the Court determined that absolute immunity applied either because the conduct (1) fell within the category of a prosecutor's decision whether to initiate a prosecution, (2) concerned the selection or limitation of criminal charges, or (3) related to the alleged failure of AP Gomperts to protect Lomando through an order of protection or some other means. *Id.* In particular, with respect to AP Gomperts's alleged failure to collect sufficient evidence and her instruction to the MPP that "there was no case" against Lomando, I found that such conduct is closely associated with the prosecution's evaluation of the evidence and decision whether to initiate charges, as opposed to the mere gathering of evidence. *Id.* at *9 (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred.") (internal citations omitted)); *Fuchs v. Mercer Cty.*, 260 F. App'x 472, 475 (3d Cir. 2008) ("Prosecutors enjoy absolute immunity for the decision to initiate a prosecution, for evaluation of evidence collected by investigators, and even for failure to conduct adequate investigation before filing charges.") (internal citations omitted). Thus, the Court considered and rejected Plaintiff's argument that absolute immunity did not apply to AP Gomperts's mere "investigative" actions. *Id.*

In light of the analysis above, Plaintiff's argument on reconsideration cannot be that the Court "overlooked" the application of immunity to "investigative" acts. Instead, Plaintiff disagrees with the Court's assessment of those acts, its rejection of the contention that AP Gomperts's conduct was merely investigative, and its decision that immunity applied. Mere continued

disagreement is not appropriately addressed on reconsideration. *See Andreyko*, 993 F. Supp. 2d at 478.

### ii. Absolute immunity and willful misconduct

Next, Plaintiff argues that absolute immunity does not apply to a prosecutor's willful misconduct. (DE 17-1 at 7). As a threshold matter, I note that nowhere in the Amended Complaint or in opposition to Defendants' motion to dismiss did Plaintiff contend that AP Gomperts's engaged in willful misconduct. The closest Plaintiff came to such argument was the allegation that "Defendants were deliberately indifferent to Bardzell's safety" and their actions "revealed willful indifference to Ms. Bardzell." (Am. Compl. ¶165). And, in briefing, Plaintiff argued that Defendants were not entitled to sovereign immunity because they "show[ed] favoritism, bias, and deliberate indifference to ongoing domestic violence" which "suggests a deviation from classic law enforcement functions better characterized as aiding and abetting the deprivation of civil rights." (DE 10 at 29). However, Plaintiff never went as far as submitting that Defendants engaged in willful misconduct. (*See* Am. Compl.; DE 10). An argument cannot be raised for the first time on reconsideration. *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2009). Nevertheless, in an abundance of caution, I will discuss the merits of Plaintiff's newly raised contention.

In support of the contention that absolute immunity does not protect a prosecutor's willful misconduct, Plaintiff cites to two provision of the New Jersey Tort Claims Act ("NJTCA"), neither of which was cited in Plaintiff's opposition to Defendants' motion to dismiss. I also note that the Amended Complaint does not contain a claim under the NJTCA. (*See* Am. Compl.). However, Plaintiff submits that statutory immunity under the NJTCA is analogous to prosecutorial immunity at common law. (DE 17-1 at 7 n.1). I do not accept the claimed analogy, let alone the identity, between the two, but I discuss the NJTCA briefly.

First, Plaintiff cites to N.J.S.A. 59:3-8, which establishes immunity for, *inter alia*, the institution of judicial proceedings by a public employee. (DE 17-1 at 7). Then, Plaintiff cites N.J.S.A. 59:3-14(a), which provides that "nothing shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." (*Id.*). Here, Plaintiff contends that AP Gomperts lost her immunity because her conduct constituted such fraud, malice, or willful misconduct. (*Id.* at 7-8). In particular, Plaintiff submits that AP Gomperts "acted not for legitimate prosecutorial reasons, but rather to assist Lomando and protect him from legitimate law enforcement efforts by the police department." (*Id.* at 7). Plaintiff, however, runs afoul of federal case law holding that a prosecutor's subjective motivation is irrelevant to determining the application of absolute immunity. *Kulwicki*, 969 F.2d at 1464 ("Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity."). Thus, even accepting as true Plaintiff's allegation that AP Gomperts chose not to charge Lomando based on bias and favoritism, her decision not to initiate charges is nonetheless protected by absolute immunity. *See id.*; *see also Bernard v. Cty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("Where, as in this case, a prosecutor's charging decisions are not accompanied by any such unauthorized demands, the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity.").

In addition to the NJTCA, Plaintiff relies on *Doe v. Phillips*, 81 F.3d 1204 (2d Cir. 1994)—a 27-year-old Second Circuit decision which it did not cite in its original briefing—for the proposition that a prosecutor's misconduct prevents the application of absolute immunity. (DE 17-1 at 8). In that case, a prosecutor instructed the plaintiff that he would dismiss charges against her if she "sw[ore] to her innocence on a bible in church" *Doe.* 81 F.3d at 1207. Because such conduct—demanding that plaintiff swear on a Bible in church—"was

6

manifestly beyond his authority," the Second Circuit held that the prosecutor was not entitled to absolute immunity. *Id.* at 1211.

The *Doe* Court "recognized that absolute immunity extends to a prosecutor's agreement to forgo prosecution in exchange for certain types of concessions by the accused." *Id.* at 1210. The demand for a religious oath in church, however, is not one of those permissible "concessions"; it was "plainly beyond the prosecutor's jurisdiction," so immunity did not apply. *Id.* at 1210-1211 (internal quotation marks omitted) (quoting *Schloss v. Bouse*, 876 F.2d 287, 291–92 (2d Cir.1989)). Immunity did not apply precisely because there is no prosecutorial function that involves compulsion of an oath in church, not because the prosecutor engaged in "misconduct." Indeed, *Doe* itself cited to at least one case wherein the Second Circuit held that absolute immunity attached while performing an advocative function regardless of alleged misconduct. *Id.* at 1209-1210 (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutor absolutely immune from liability on damages claim that he conspired to present false evidence at criminal trial)).

Before this Court on Defendants' motion to dismiss, Plaintiff never argued that AP Gomperts engaged in conduct outside of her prosecutorial function or authority. (*See* DE 10). It is true that Plaintiff argued AP Gomperts was motivated by her subjective bias and favoritism in failing to prosecute Lomando. But it was never alleged that Gomperts *acted* beyond the scope of a prosecutor's functions, *e.g.,* by requiring a religious oath. Even now, Plaintiff alleges that AP Gomperts had improper motives but not that she engaged in non-prosecutorial conduct. (*See* DE 17-1 at 7-8 (submitting that AP Gomperts chose not to charge Lomando "for an improper purpose."). Plaintiff submits that AP Gomperts's actions were based on "personal predilection" or were taken "for personal reasons" and "not for legitimate law enforcement reasons." (DE 17-1 at 8). In other words, Plaintiff focuses on the *reasons for* and *motivations behind* AP Gomperts's actions; she alleges that Gomperts performed prosecutorial functions in a wrongful manner. Plaintiff does not actually

7

submit that AP Gomperts engaged in *conduct* beyond the jurisdiction or function of a prosecutor. (*See* DE 17-1). Therefore, *Doe* is not analogous.

Plaintiff also cites to the Fifth Circuit's decision in *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2009). (DE 17-1 at 9). There, the Court held that prosecutors were not entitled to absolute immunity for the alleged creation and use of fake subpoenas which were used to bluff or coerce cooperation from potential witnesses. Such conduct, it found, was merely investigative and more akin to police work than to the initiation of criminal charges. *Id.* at 784. The Court explained:

> Based upon the pleadings before us at this time, it could be concluded that Defendants' creation and use of the fake subpoenas was not "intimately associated with the judicial phase of the criminal process," but rather fell into the category of "those investigatory functions that *do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.*

*Id.* at 782 (emphasis added). Thus, contrary to Plaintiff's assertion, the alleged "misconduct" of the prosecutor did not factor into the Court's analysis. In fact, the Court explicitly stated that, in exercising their advocatory functions, prosecutors are entitled to immunity even if they engage in willful misconduct. *Id.* at 780 ("Prosecutors are absolutely immune even for '[w]ilful or malicious prosecutorial misconduct . . . if it occurs in the exercise of their advocatory function.' But by the same token, 'state prosecutors are not entitled to absolute immunity when they perform functions other than their quasi-judicial functions of 'initiating prosecutions and presenting the State's case.'") (internal citations omitted). The point was that these counterfeit "subpoenas," never issued by any court, were not truly information-gathering subpoenas at all, but investigative subterfuges.

As explained in the January 27 Opinion, I found that the allegations in the Amended Complaint did not involve merely investigative functions. Instead, the complained-of conduct related to AP Gomperts's decision (1) not to initiate criminal proceedings against Lomando, (2) to limit the charges in Bardzell's

8

criminal complaint to third-degree offenses, and (3) not to issue a temporary restraining order or order of protection. *Estate of Bardzell*, 2021 WL 288090 at *9-14. Thus, *Singleton* is not analogous.

Because Plaintiff raises it for the first time on reconsideration and because Plaintiff failed to demonstrate that the Court made a clear error of law, I decline to grant reconsideration on the ground that AP Gomperts engaged in allegedly willful misconduct.

### c. Factual issues in determining applicability of immunity

Third, Plaintiff submits that "[o]nly upon completion of discovery, if Plaintiff is unable to marshal sufficient evidence of willful misconduct, will absolute immunity operate to exonerate Defendants at the summary judgment stage of litigation." (DE 17-1 at 10). This argument fails, in part, for the same reason Plaintiff's previous argument fails: if a prosecutor is engaged in an advocacy function (*e.g.*, if her actions are intertwined with initiating judicial proceedings, *see Odd*, 538 F.3d at 208; *Giuffre v. Bissel*, 31 F.3d 1241, 151), then her actions are protected by absolute immunity whether or not she engaged in misconduct. Immunity depends on the nature of the function, not the rightful or wrongful manner in which it is performed:

> To give examples of prosecutorial activities protected by absolute, as opposed to qualified, immunity, soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected. [citing *Bums v. Reed*, 500 U.S. 478 (1991)]. Use of the false testimony in connection with the prosecution is absolutely protected. *See id.* at 1939 (eliciting false or defamatory statements from witnesses in a judicial proceeding was immunized at common law). Even interviews generating evidence to be presented to a grand jury are absolutely protected. [citing *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989)] (prosecutor's solicitation of testimony for use in grand jury proceedings is "encompassed within 'the preparation necessary to present a case' and therefore [is] immunized as involving the prosecutors' advocacy functions.") (citation omitted).

*Kulwicki*, 969 F.2d at 1465.

Indeed, the quote from *Hill v. City of New York* relied upon by Plaintiff belies its argument:

> [W]hen it may not be gleaned from the complaint *whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role*, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.

(DE 17-1 at 10 (quoting *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995) (emphasis added). In *Hill*, discovery was needed *not* to determine whether the prosecutor engaged in *misconduct* but to determine "what function [he] was engaged in" – i.e., whether he was acting as an investigator or as an advocate – when he videotaped certain interviews. *Hill*, 45 F.3d at 663. Thus, it is irrelevant for purpose of determining whether absolute immunity applies if Plaintiff can "marshal sufficient evidence of willful misconduct." It is the *function*, not the alleged misconduct, that is dispositive. *See*, *Kulwicki*, 969 F.2d at 1465. Ordinarily that function can be gleaned from the face of the complaint. And indeed, the immunity doctrine is designed to function at the earliest possible stage; that is its purpose.

The same holds true for Eleventh Amendment immunity. The Eleventh Amendment has been authoritatively interpreted to mean that states may not be sued by private parties in federal court without consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984). As analyzed in my prior opinion, that immunity applies to county prosecutors in their official capacities, discharging their prosecutorial, as opposed to administrative, functions. It is an immunity from suit, not an ordinary defense to an action.

Finally, I reiterate that, in the Third Circuit, the subjective motivation of an individual prosecutor is irrelevant in assessing whether that prosecutor is entitled to immunity. In *Kulwicki*, the plaintiff alleged that the defendant prosecutor initiated criminal proceedings against him for purely political motives. 969 F.2d at 1463. The Third Circuit noted that determination of "whether absolute immunity is available for particular actions" is a "'functional

10

analysis," and that consideration of subjective or personal motivation "is directly at odds" with that functional analysis. *Id.* at 1463-64. Because, functionally, the prosecutor was absolutely immune in connection with the decision to initiate charges, his political motivation in doing so did not matter. *Id.* at 1464. As applied here, AP Gomperts's allegedly improper motive in *declining* to prosecute Lomando is *a fortiori* entirely irrelevant. *See id.* at 1463-64 ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred."); *see also Bernard*, 356 F.3d at 507 (holding "that a political motive does not deprive prosecutors of absolute immunity from suit for authorized decisions made in the performance of their function as advocates."). Therefore, discovery is not needed to determine whether any of the alleged misconduct (bias, favoritism, deliberate indifference) occurred.

### d. Validity of current immunity doctrine

Lastly, Plaintiff argues that if immunity exonerates willful misconduct, then the immunity doctrines should be revisited. (DE 17-1 at 11). To that end, Plaintiff submits:

> Plaintiff concedes that certain judicial opinions appear to cloak all charging decisions in absolute immunity. *See, e.g., Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2004) (holding that prosecutor engaging in an allegedly politically-motivated prosecution was nonetheless entitled to absolute immunity, since the decision to file charges was a prosecutorial function). It is respectfully averred that these cases were wrongly decided because the courts failed to draw the proper distinction between investigatory or administrative functions as opposed to truly prosecutorial or advocative functions. To the extent these cases immunize wanton prosecutorial misconduct, then the immunity doctrines themselves need an overhaul.

(DE 17-1 at 11).

Plaintiff's argument is misplaced on a motion for reconsideration. The remedy of reconsideration is to be granted "sparingly" and based only on the

11

presence of certain factors: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *NL Indus. Inc.*, 935 F. Supp. at 516; *Max's Seafood*, 176 F.3d at 677.

The alleged invalidity of current Third Circuit jurisprudence is not a basis on which to grant reconsideration. I am bound by Court of Appeals precedent unless and until that Court or the Supreme Court should alter it. The proper channel to assert Plaintiff's contentions is through appeal.

### III.   Conclusion

For the reasons set forth above, I will deny Plaintiff's motion (DE 17) for reconsideration. An appropriate order follows.

Dated: April 22, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**